161 P.3d 448 (2007)
STATE of Washington, Respondent,
v.
Torrance Cornelius STRATTON, Appellant.
No. 25037-7-III.
Court of Appeals of Washington, Division 3.
July 3, 2007.
Eric J. Nielsen, Jennifer M. Winkler, Nielsen Broman & Koch PLLC, Seattle, WA, for Appellant.
David Wayne Corkrum, Frank William Jenny II, Attorneys at Law, Pasco, WA, for Respondent.

PUBLISHED OPINION
BROWN, J.
¶ 1 Torrance Stratton appeals his five convictions for first degree assault contending his Fifth Amendment right to remain silent was violated when the trial court allowed the jury to view a patrol car video in which he declined to give his name. But recent United States Supreme Court authority holds otherwise. See Hiibel v. Sixth Jud. Court of Nevada, Humboldt County, 542 U.S. 177, 189-91, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004). Further, Mr. Stratton contends the superior court erred in allowing an officer to testify that a victim told him one of the armed men, identified later as Mr. Stratton, wore a yellow t-shirt. But the description was properly admitted under ER 801(d), as part of a statement of identification made after perceiving the person. Accordingly, we affirm.

FACTS
¶ 2 Early on December 12, 2004, Jose Macias hosted a party for about 20 persons at the Pasco home he shared with his sister, Griselda Macias. Francisco and Vicente Muniz attended, along with a black man, Monye Townsend, and his friend, Junior Ramos, known as Seagull. Mr. Macias described Mr. Townsend as short and bald. *449 After an argument, Mr. Macias forced Mr. Townsend and Seagull to leave.
¶ 3 Soon, Mr. Townsend and Seagull barged back in, this time with a third man, later identified as Mr. Stratton, who Ms. Macias described as wearing a "bright" shirt. Report of Proceedings (RP) at 193. Apparently, two guns were seen displayed by the three men and Mr. Stratton was said to have made threats to shoot. Ms. Macias testified the three men were forced out of the apartment, but they immediately returned and shots were fired. A bullet grazed Ms. Macias on the arm. Frankie and Vicente Muniz were struck by bullets, as were Jamie Mercado, Diana Garcia and Guillermo Sparling.
¶ 4 Pasco Police Officer Macario Chavez was patrolling that night in an audio/video equipped car when he was notified by dispatch about the shooting. He spotted and followed a vehicle matching the dispatch description. Officer Chavez pulled in behind the suspect vehicle when it parked on a side street and saw a black male dressed in a yellow shirt walking away from behind the vehicle. Officer Chavez later identified that man in court as Torrance Stratton. Officer Chavez testified Mr. Stratton "didn't want to talk to me." RP at 131. Defense counsel objected. The court sustained the objection and instructed the jury to disregard that testimony.
¶ 5 The State then played the patrol car audio/video DVD, Exhibit 2, for the jury; the man identified as Mr. Stratton did not clearly respond when asked his name three times. Defense counsel objected but then agreed with the court that asking for the suspect's name was permitted. In court, Officer Chavez identified the person in the DVD wearing the yellow shirt as Mr. Stratton.
¶ 6 In a show-up identification, Ms. Macias placed both Mr. Townsend and Mr. Stratton at the shooting scene. She positively identified the man in the yellow shirt as one of the armed men. A black Smith and Wesson handgun with a silver slide was found in the street about 50 feet from the suspects' stopped vehicle. Bullet casings found at the Macias' home matched the Smith and Wesson.
¶ 7 Mr. Stratton was charged with five counts of first degree assault. The charges were later amended to add allegations that Mr. Stratton committed the offenses while armed with a firearm, within the meaning of RCW 9.94A.602, thereby subjecting him to the enhanced penalty of RCW 9.94A.510(3).
¶ 8 At trial, Francisco could not remember what color shirt the black man with the gun was wearing. But he did testify that police officers interviewed him at the hospital, and he remembered that he was able to describe the man's clothing at that time.
¶ 9 Police Officer Michael Nelson testified he interviewed Francisco at the hospital. Defense counsel unsuccessfully objected when the State asked Officer Nelson to repeat what Francisco had told him about the shooter's clothing. Officer Nelson then related that Francisco had told him the black male who was holding the silver and black firearm was wearing a yellow t-shirt. Officer Nelson testified that Francisco identified Mr. Stratton in a photomontage as the man who was wearing a yellow t-shirt.
¶ 10 Daisy Sanchez, who knew Mr. Stratton from high school, positively identified him in court as being present at the party and having a gun, but she did not see him or anyone else shooting. Other witnesses were unclear about whether the person identified as Mr. Stratton was armed or not.
¶ 11 The jury was instructed on accomplice liability. It convicted Mr. Stratton on all counts, but without the firearm enhancements. The court sentenced Mr. Stratton to consecutive standard range sentences of 120 months. Mr. Stratton appealed.

ANALYSIS

A. DVD Evidence
¶ 12 The issue is whether the trial court erred in admitting the patrol car audio/video DVD and allowing the jury to hear Mr. Stratton decline to answer Officer Chavez's identification questions. Mr. Stratton contends this violated his Fifth Amendment right to remain silent. We disagree.
¶ 13 The DVD was admitted as illustrative of the arresting officer's testimony. *450 In that regard, it was relevant. However, even relevant evidence may be excluded on constitutional grounds or if its prejudicial effect "substantially" outweighs its probative value. ER 403.
¶ 14 In Hiibel, the court addressed a related question: "Although it is well established that an officer may ask a suspect to identify himself in the course of a Terry [v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] stop, it has been an open question whether the suspect can be arrested and prosecuted for refusal to answer." Hiibel, 542 U.S. at 186-87, 124 S.Ct. 2451. There, the defendant had been arrested and convicted under Nevada's "stop and identify" law. The court held: "[a] state law requiring a suspect to disclose his name in the course of a valid Terry stop is consistent with Fourth Amendment prohibitions against unreasonable searches and seizures." Id. at 188, 124 S.Ct. 2451.
¶ 15 The Hiibel court discussed whether the state statute in question violated the defendant's Fifth Amendment right not to incriminate himself. Id. at 189, 124 S.Ct. 2451. The court held that under the circumstances, no violation occurred because "petitioner's refusal to disclose his name was not based on any articulated real and appreciable fear that his name would be used to incriminate him, or that it `would furnish a link in the chain of evidence needed to prosecute' him." Id. at 190, 124 S.Ct. 2451 (quoting Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951)). However, "a case may arise where there is a substantial allegation that furnishing identity at the time of a stop would have given the police a link in the chain of evidence needed to convict the individual of a separate offense." Id. at 191, 124 S.Ct. 2451.
¶ 16 Although it arose in a different context, Hiibel effectively disposes of Mr. Stratton's argument that admission of his refusal to identify himself violated his Fifth Amendment privilege. Mr. Stratton had no "articulated real and appreciable fear that his name would be used to incriminate him, or that it `would furnish a link in the chain of evidence needed to prosecute' him." Id. at 190, 124 S.Ct. 2451 (quoting Hoffman, 341 U.S. at 486, 71 S.Ct. 814). Indeed, the witnesses to the shooting did not know Mr. Stratton's name.
¶ 17 Although Mr. Stratton argues he was prejudiced because his refusal to identify himself raised an inference that he had something to hide, given the Hiibel holding, any error is non-constitutional. Defense counsel also argued the evidence was cumulative, but the trial court acted within its discretion to admit the DVD. See State v. French, 157 Wash.2d 593, 605, 141 P.3d 54 (2006). The 40-minute DVD covered about four minutes of three intermittent and unclear refusals. Moreover, the related factual issue was not whether Mr. Stratton was with the shooters at the party, but whether he carried and fired one of the guns. Because the jury found he was an accomplice but not armed, Mr. Stratton cannot show prejudice. In sum, Mr. Stratton fails to show either constitutional or non-constitutional error.

B. Identification Evidence
¶ 18 The issue is whether, considering ER 801(d), the trial court erred in allowing Officer Nelson's hearsay evidence of Francisco's hospital identification of Mr. Stratton as the person wearing the yellow t-shirt. Mr. Stratton contends that a description of clothing worn by a person is not a statement made in identification of a person.
¶ 19 A statement is not hearsay if "the declarant testifies at the trial . . . and is subject to cross-examination concerning the statement, and the statement is . . . (iii) one of identification of a person made after perceiving the person." ER 801(d)(1). In Porter v. United States, 826 A.2d 398, 410 (D.C.App.2003), the court considered a similar rule in the context of an officer's testimony about a witness's identification of the defendants from a photo array and the role that each played in the crimes. The court observed that "the complaining witness' description of the offense itself is admissible under this exception only as to the extent necessary to make the identification understandable to the jury." Id. at 409-10 (citing Williams v. United States, 756 A.2d 380, 387 (D.C.App.2000)) (emphasis added).
*451 ¶ 20 Further, "[t]here is no logical reason to permit the introduction of a witness's out-of-court identification and to exclude statements identifying the various physical characteristics of a person perceived by the witness, or the composite of all those physical characteristics, which is no more than the sum of the parts perceived." Commonwealth v. Weichell, 390 Mass. 62, 72, 453 N.E.2d 1038 (1983); see also Commonwealth v. Morgan, 30 Mass.App.Ct. 685, 573 N.E.2d 989, 992 (1991) ("We assume, at least for purposes of this case, that any hearsay exception relating to extrajudicial identifications would also relate to an extrajudicial description of clothing.").
¶ 21 Here, the various witnesses did not know Mr. Stratton by name. Therefore, they identified him by describing his clothing. ER 801(d) allows this type of identification. The alleged inconsistencies among the identifications made by the various witnesses merely affect the weight of Officer Nelson's testimony about what Francisco told him, but not its admissibility. Given this reasoning, we do not analyze the State's additional arguments that Officer Nelson's testimony was admissible to show a prior inconsistent statement by Francisco or that Officer Nelson's testimony, if inadmissible, was only harmless error. Notably, considering the jury's finding that Mr. Stratton was not armed, he cannot show prejudice in light of the jury's limited accomplice liability findings which are amply supported in this record.
¶ 22 Affirmed.
SWEENEY, C.J., and SCHULTHEIS, J., concur.