IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30521-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RAMON RIOS GONZALEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J.—Ramon Rios Gonzalez appeals his conviction for first degree child molestation. He mainly assigns error to the trial court's admission and consideration of the victim's out-of-court statements and his trial attorney's ineffective assistance for not challenging the statements. We reject his contentions and conclude the evidence sufficiently supports the related findings of fact and Mr. Gonzalez's conviction. Because we reject Mr. Gonzalez's error claims, we do not address his cumulative error contentions. Accordingly, we affirm.

## FACTS

All but two factual findings are unchallenged verities on appeal. *See* RAP 10.3(g); *Davis v. Dep't of Labor & Indus.,* 94 Wn.2d 119, 123, 615 P.2d 1279 (1980). The State charged Mr. Gonzalez with first degree child molestation of B.P., his great niece, who was six years old during the molestation and nine years old at trial. She

testified that while attending a family gathering in the summer of 2008, Mr. Gonzalez

called her into a dark bedroom and touched her "private parts" under her pants, near

her vagina. Clerk's Papers (CP) at 45-47; *see* Report of Proceedings (RP) at 47. B.P.

could not identify Mr. Gonzalez at trial. She disclosed the incident to her mother, Miriam

Pinon, the next day, identifying her molester as "my daddy's uncle," "the uncle from the

boat." RP at 53.

Ms. Pinon recounted B.P. identified Mr. Gonzalez through exhibit 5, a group

photograph from the family gathering, a few months later. Ms. Pinon took action about

a year later, when two other nieces disclosed Mr. Gonzalez had raped or molested them

too. A victim's advocate, Amy Gallardo, recounted B.P. identified her molester as "my

dad's uncle" during her forensic interview. RP at 148; *accord* Ex. 6, at 1:44:36-:44:56

p.m., Jan. 22, 2010. Additionally, B.P. described her molester as a man with "lighter

skin, short hair that was kind of dark, tall and thin"; and a man who "she had never seen

. . . before the party . . . or since the party." RP at 146, 148-49.

In an earlier pretrial hearing, the attorneys and the trial judge extensively

discussed whether to admit B.P.'s out-of-court statements:

> THE COURT: . . . . You [the deputy prosecutor] have someone – the
> child that you want to interview and put on tomorrow as far as her
> testimony, is that right, in the morning?
> MR. BOSWELL [the deputy prosecutor]: Yes.
> MR. SANDLIN [defense counsel]: What is the problem with the child
> hearsay rule? If he's going to put the child on, that's fine. We want the
> child on so we can examine her.
> MR. BOSWELL: And it's the State's intent to call her, planning on
> calling the child as a witness. The child hearsay rule is just even with the
> child testifying we can still, depending upon what she testifies to –

2

THE COURT: Do we need a competency hearing. Are you saying she can testify?

MR. BOSWELL: She's nine now. She's competent.

MR. SANDLIN: Of course she is, yeah.

THE COURT: Well, if you agree on that, that takes care of that problem.

MR. SANDLIN: Then there's no child hearsay, that's the problem.

THE COURT: Well, it would be hearsay because she made statements at the time when she was underage.

MR. BOSWELL: Yes, under the age of ten.

. . . .

. . . And I know the State provided briefing to that but I don't think Mr. Sandlin ever did, at least I didn't see any.

. . . .

MR. SANDLIN: Well, the rule is clear, if it's under nine but the issue is was she competent and if she's competent why are we restating what she's saying?

. . . .

THE COURT: . . . I'm quoting now from Ms. Rosborough [the former deputy prosecutor]'s brief [regarding competency]. . . .

. . . .

MR. BOSWELL: It's my understanding that Mr. Sandlin has had an opportunity to interview her.

MR. SANDLIN: Yeah.

THE COURT: [Case law] directs trial courts to the *Ryan*[1] factors as useful to determining reliability. I have to – I gotta compliment Ms. Rosborough in this brief. I think she did –

MR. SANDLIN: Yeah, I think it was very good.

. . . .

. . . Well, that's the reason I didn't respond to the brief. She put all the law in there.

THE COURT: Well, again, those are things the Court has to do unless counsel agree that we can proceed. Let's begin. I'm not going to get into that. That's up to both counsel.

MR. SANDLIN: I think – she was competent when I listened to her.

MR. BOSWELL: I guess the issue is not whether – I guess if she's not competent, the statements can still come in if there's the *reliability* as I (inaudible) on the *Ryan* factors but even is [sic] she is competent, the statements can still come in.

. . . .

---

[1] *State v. Ryan*, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984).

3

. . . Does that make sense? I think Mr. Sandlin – the impression I'm getting from Mr. Sandlin is that if she testifies, the statements don't come in because she's testifying.

MR. SANDLIN: Well, *we'll want them to come in anyway for impeachment purposes.*

MR. BOSWELL: Okay, okay.

THE COURT: Okay, so am I safe to say that there's not a problem here?

MR. SANDLIN: *Doesn't seem to me that there's a problem here.*

THE COURT: Okay.

MR. SANDLIN: However, *how many hearsay statements are we going to admit?* Are we going to have three tiers of hearsay statements, what she said to mom, what she said to dad later, what she said to the sexual assault victim later, you know. There's gotta be an end to this at some point.

MR. BOSWELL: It's – my understanding it's just the two levels. It's just the immediate disclosure to the mother which was the day after the incident and then a year later when she talked with Amy Gallardo of our Victim Witness Unit. It's my understanding she's never spoken to the father about this.

MR. SANDLIN: Well, she has, but whatever.

THE COURT: Okay.

MR. BOSWELL: I guess I'm a little confused where we're going. . . .

. . . .

THE COURT: I think what I'm hearing from Mr. Sandlin allays my concern here. I mean, *the defense has agreed to a number of things,* if I understand correctly, that would make a continuation not necessary. I think we can go, and I – you know, that's a – these things have a habit of kind of morphing. We'll just have to deal with it if we start the trial.

RP (Sept. 19, 2011) at 15-19 (emphasis added).

Mr. Gonzalez soon waived his jury trial right. After the colloquy, the attorneys and the trial judge briefly discussed this waiver's impact:

THE COURT: Okay. Alright, the Court's satisfied.

MR. SANDLIN: Okay. So that solves a lot of pretrial motions, too.

THE COURT: Well, it certainly does.

. . . .

MR. BOSWELL: No. Do we still want to do – I guess now that it's a bench trial, I understand that but how do we want to handle the [ER] 404(b), [RCW] 10.58.090? Do we still want to do that beforehand –

4

MR. SANDLIN: No, I think it's a bench trial –
MR. BOSWELL: – as a part of trial.
MR. SANDLIN: We can – it's a bench trial, so therefore there's not going to be a – if we've read the material and you're [the trial judge] not going to compartmentalize your brain. You're going to look at it and make a decision, it's that simple.

RP (Sept. 19, 2011) at 35.

At a bench trial, the deputy prosecutor presented B.P.'s out-of-court statements. Defense counsel did not object to the statements on grounds of hearsay or RCW 9A.44.120(1) reliability. The trial court eventually admitted the statements, found Mr. Gonzalez guilty as charged, and entered two challenged factual findings:

1.7 B.P. identified the defendant through State's Exhibit 5. There was some question as to whether this was an appropriate exhibit. The Court would agree with the defendant and defense counsel that had this been done by law enforcement it probably would not have been admitted. Nevertheless it was done by a lay person in a way the Court finds was not leading, and did not infer what the answer should be. The Court accepts Miriam Pinon's testimony that she did not specifically point at the defendant here, but pointed at the picture and asked the child to identify the defendant, which B.P. did. There is also testimony that B.P. remembered the defendant from the trip on the boat. It is clear to the Court that the identification is acceptable and reliable. The Court accepts the testimony.

. . . .

1.10 The Court did consider that B.P.'s physical description of the perpetrator is different than the defendant's actual physical appearance; however, based upon the oral description B.P. gave to her mother and Ms. Gallardo the Court finds that is the substantial item that the Court basis it's decision.

CP at 47-48; *accord* RP at 422, 425. Mr. Gonzalez appealed.

5

No. 30521-0-III
*State v. Gonzalez*

ANALYSIS

A. Statements Under RCW 9A.44.120(1)

The issue is whether the trial court erred in admitting B.P.'s out-of-court statements. Mr. Gonzalez contends the statements are not reliable under RCW 9A.44.120(1). The State argues Mr. Gonzalez waived any error claim because his trial attorney did not object to the statements on grounds of hearsay or RCW 9A.44.120(1) reliability.[2] We agree with the State. We reject an error claim challenging hearsay or RCW 9A.44.120(1) reliability for the first time on appeal. *See* RAP 2.5(a); ER 103(a)(1); *State v. Leavitt*, 111 Wn.2d 66, 71-72, 758 P.2d 982 (1988).

Even so, alternative grounds exist to affirm admitting the specific statements Mr. Gonzalez challenges. *See* RAP 2.5(a); *Thomas v. French*, 99 Wn.2d 95, 104, 659 P.2d 1097 (1983). We review evidence admission for abuse of discretion.[3] *State v. Swann*, 114 Wn.2d 613, 665, 790 P.2d 610 (1990). The child hearsay statute partly provides:

> A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, . . . not otherwise admissible by statute or court rule, is admissible in evidence in . . . criminal proceedings . . . if:

---

[2] The record is ambiguous on whether Mr. Gonzalez invited any error. We need not decide this issue because Mr. Gonzalez did not object to the statements on grounds of hearsay or RCW 9A.44.120(1) reliability.

[3] A trial court abuses its discretion if its decision is "manifestly unreasonable," based on "untenable grounds," or made for "untenable reasons." *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971); *see also State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) ("A decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported in the record or was reached by applying the wrong legal standard. A decision is manifestly unreasonable if the court, despite applying the correct legal standard to the supported facts, adopts a view that no reasonable person would take, and arrives at a decision outside the range of acceptable choices." (citations omitted) (internal quotation marks omitted)).

(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability;[4] and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

RCW 9A.44.120; *see* ER 807.

The child hearsay statute does not apply to the specific statements Mr. Gonzalez challenges because they merely identify him as her molester.[5] If an out-of-court statement is solely "one of identification of a person made after perceiving the person," it is not hearsay and is thus admissible where the declarant testifies at trial subject to

---

[4] Nine factors assist in evaluating the reliability of child hearsay statements:

(1) whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; . . . (5) the timing of the declaration and the relationship between the declarant and the witness[;] . . . ([6]) the statement contains no express assertion about past fact[;] ([7]) cross examination could not show the declarant's lack of knowledge[;] ([8]) the possibility of the declarant's faulty recollection is remote[;] and ([9]) the circumstances surrounding the statement . . . are such that there is no reason to suppose the declarant misrepresented defendant's involvement.

*Ryan*, 103 Wn.2d at 175-76 (internal quotation marks omitted) (quoting *State v. Parris*, 98 Wn.2d 140, 146, 654 P.2d 77 (1982)) (citing *Dutton v. Evans*, 400 U.S. 74, 88-89, 91 S. Ct. 210, 27 L. Ed. 2d 213 (1970)).

[5] Mr. Gonzalez challenges B.P.'s out-of-court statements identifying her molester as "my daddy's uncle"; "the uncle from the boat"; "my dad's uncle"; a man with "lighter skin, short hair that was kind of dark, tall and thin"; and a man who "she had never seen . . . before the party . . . or since the party." RP at 53, 146, 148-49.

7

cross-examination.[6] ER 801(d)(1)(iii); *see, e.g., State v. Simmons*, 63 Wn.2d 17, 385 P.2d 389 (1963), *cited in* ER 801(d)(1)(iii) cmt., 91 Wn.2d 1163 (1978); *State v. Stratton*, 139 Wn. App. 511, 516-18, 161 P.3d 448 (2007); *State v. Grover*, 55 Wn. App. 923, 931-34, 780 P.2d 901 (1989); *State v. Grover*, 55 Wn. App. 252, 255-59, 777 P.2d 22 (1989); *State v. Jenkins*, 53 Wn. App. 228, 230-36, 766 P.2d 499 (1989). The child hearsay statute does not apply to such identifications because they do not "describ[e] any act of sexual contact performed with or on the child by another" and are "otherwise admissible by statute or court rule." RCW 9A.44.120. The trial court did not err in admitting B.P.'s out-of-court statements.

## B. Ineffective Assistance

The issue is whether Mr. Gonzalez received ineffective assistance of counsel regarding B.P.'s out-of-court statements. He contends his trial attorney performed deficiently and prejudiced the defense when he did not object to the statements on grounds of hearsay or RCW 9A.44.120(1) reliability.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 & n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970); *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003). To prove counsel was ineffective, the defendant must show "counsel's performance was deficient" and "the deficient performance prejudiced the defense."

---

[6] Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is inadmissible unless an exception applies. ER 802.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Failure to show either element defeats the claim. *Id.* at 697.

Deficient performance occurs if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. This standard requires "reasonableness under prevailing professional norms" and "in light of all the circumstances." *Id.* at 688, 690. The defendant must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To do so, the defendant must show counsel's performance cannot be explained as a sound defense strategy. *Id.*

Prejudice occurs if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability of a different result exists where counsel's deficient performance "undermine[s] confidence in the outcome." *Id.* The defendant "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. Instead, the defendant "has . . . the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 696. This standard requires evaluating the totality of the record. *Id.* at 695.

Because the specific statements Mr. Gonzalez challenges were admissible as non-hearsay under ER 801(d)(1)(iii), it makes no difference whether his trial attorney objected to the statements on grounds of hearsay or RCW 9A.44.120(1) reliability. Therefore, his trial attorney neither performed deficiently nor prejudiced the defense.

9

Mr. Gonzalez did not receive ineffective assistance of counsel regarding B.P.'s out-of-court statements.

### C. Confrontation

The issue is whether the trial court violated Mr. Gonzalez's confrontation right by admitting B.P.'s out-of-court statements. He contends the statements are inadmissible because they lack "'adequate indicia of reliability,'" considering they neither fit a "'firmly rooted hearsay exception'" nor bear "'particularized guarantees of trustworthiness.'"[7] Second Am. Br. of Appellant at 48 (quoting *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), *abrogated by Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)).

The United States Supreme Court discarded the *Roberts* test 10 years ago, as numerous judicial opinions have since recognized. *Crawford*, 541 U.S. at 60-69; *Davis v. Washington*, 547 U.S. 813, 825 & n.4, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006); *United States v. Gonzalez-Lopez*, 548 U.S. 140, 145-46, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006); *Whorton v. Bockting*, 549 U.S. 406, 413, 416, 127 S. Ct. 1173, 167 L. Ed. 2d 1 (2007); *Danforth v. Minnesota*, 552 U.S. 264, 270, 128 S. Ct. 1029, 169 L. Ed. 2d 859 (2008); *Giles v. California*, 554 U.S. 353, 374 & n.6, 128 S. Ct. 2678, 171 L. Ed. 2d 488 (2008); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312-13, 317, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009); *Michigan v. Bryant*, ___ U.S. ___, 131 S. Ct. 1143,

---

[7] Mr. Gonzalez may not raise this error claim for the first time on appeal because, as discussed below, he has not shown a "manifest error affecting a constitutional right." RAP 2.5(a)(3); *see State v. Kronich*, 160 Wn.2d 893, 899-901, 161 P.3d 982 (2007), *overruled on other grounds by State v. Jasper*, 174 Wn.2d 96, 116, 271 P.3d 876 (2012).

10

1152, 179 L. Ed. 2d 93 (2011); *Bullcoming v. New Mexico*, ___ U.S. ___, 131 S. Ct. 2705, 2713, 180 L. Ed. 2d 610 (2011); *Williams v. Illinois*, ___ U.S. ___, 132 S. Ct. 2221, 2232, 183 L. Ed. 2d 89 (2012) (plurality opinion).

Now, under *Crawford*, "[t]estimonial statements of witnesses absent from trial [may be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." 541 U.S. at 59. Because B.P. testified at trial subject to cross-examination, her out-of-court statements were admissible regardless of whether they were testimonial. *See id.* at 59 n.9 (citing *California v. Green*, 399 U.S. 149, 162, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970)). Therefore, the trial court did not violate Mr. Gonzalez's confrontation right by admitting B.P.'s out-of-court statements.

## D. Evidence Sufficiency

The issues are whether substantial evidence supports factual findings 1.7 and 1.10, and whether sufficient evidence supports Mr. Gonzalez's conviction for first degree child molestation.

Following a bench trial, we review the trial court's factual findings and legal conclusions to determine whether substantial evidence supports the findings and the findings support the conclusions. *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 437, 545 P.2d 1193 (1976); *State v. Halstein*, 122 Wn.2d 109, 128, 857 P.2d 270 (1993). Evidence substantially supports a factual finding if it is "evidence in sufficient quantum to persuade a fair-minded, rational person of the truth of a declared premise." *Helman v. Sacred Heart Hosp.*, 62 Wn.2d 136, 147, 381 P.2d 605 (1963). Where

substantial evidence supports a factual finding, we must not "substitute [our] finding for that of the trial court," even if we might have resolved the factual dispute differently. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959). We defer to the trial court's assessment of witness credibility and evidence weight. *In re Welfare of Sego*, 82 Wn.2d 736, 739-40, 513 P.2d 831 (1973).

The Fourteenth Amendment due process clause requires the State to prove all essential elements of a charged crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). And, the Fifth Amendment double jeopardy clause "forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks v. United States*, 437 U.S. 1, 11, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). Evidence sufficiently supports a guilty finding if "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). An evidence sufficiency challenge "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Again, we defer to the trial court's assessment of witness credibility and evidence weight. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

A person commits first degree child molestation if he or she has "sexual contact with another who is less than twelve years old and not married to the perpetrator and

the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1).

"It is axiomatic in criminal trials that the prosecution bears the burden of establishing beyond a reasonable doubt the identity of the accused as the person who committed the offense." *State v. Hill*, 83 Wn.2d 558, 560, 520 P.2d 618 (1974).

First, Mr. Gonzalez argues B.P. gave Ms. Pinion and Ms. Gallardo no "oral description" identifying him as her molester. CP at 48. He complains the trial court could not find such identification from B.P.'s out-of-court statements because they were too general and self-contradictory. Ms. Pinion testified that the day after the molestation, B.P. identified her molester as "my daddy's uncle," "the uncle from the boat." RP at 53. Ms. Gallardo testified that during her forensic interview, B.P. identified her molester as "my dad's uncle." RP at 148; *accord* Ex. 6, at 1:44:36-:44:56 p.m., Jan. 22, 2010. These identifications pinpointed Mr. Gonzalez because he is B.P.'s great uncle and B.P. knew him from when she and Ms. Pinon rode in a boat he was selling. Assessing witness credibility and evidence weight, the trial court believed this testimony, even considering B.P.'s deficiencies in giving an accurate physical description and inconsistent answers about not seeing her molester before or after the family gathering. We defer to the trial court's appraisal of these matters. The evidence is enough to persuade a fair-minded, rational person that B.P. identified Mr. Gonzalez as her molester. Thus, we conclude substantial evidence supports factual finding 1.10.

Second, Mr. Gonzalez argues B.P. did not "identif[y] the defendant through . . . Exhibit 5" but merely suggested she recognized the family gathering or another great uncle depicted in the photograph. CP at 47. Additionally, he argues the trial court could

not find this out-of-court identification lacked suggestiveness because neither Ms. Pinon nor B.P. could remember its full details.

But Ms. Pinon testified that a few months after the molestation, B.P. identified Mr. Gonzalez through Exhibit 5. The photograph depicted Mr. Gonzalez among three other great uncles. Ms. Pinon showed the photograph to B.P. and asked her to identify Mr. Gonzalez. While Ms. Pinon could not recall the exact words she used, she was certain she did not point at any specific person depicted in the photograph and did not otherwise suggest an answer. B.P. pointed to the man with the hat, Mr. Gonzalez. Assessing witness credibility and evidence weight, the trial court believed this testimony. Again, we defer to the trial court's appraisal of these matters. The evidence is enough to persuade a fair-minded, rational person that B.P. identified Mr. Gonzalez through Exhibit 5. Additionally, the evidence is enough to persuade a fair-minded, rational person the out-of-court identification lacked suggestiveness. Thus, we conclude substantial evidence supports factual finding 1.7.

Any conflicts between B.P.'s trial testimony and her prior statements are likewise matters of witness credibility and evidence weight, on which we defer to the trial court. In sum, viewing the evidence in the light most favorable to the State, a rational trier of fact could find Mr. Gonzalez was B.P.'s molester beyond a reasonable doubt. Accordingly, we conclude sufficient evidence supports Mr. Gonzalez's conviction for first degree child molestation.

No. 30521-0-III
*State v. Gonzalez*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Brown, J.

WE CONCUR:

Korsmo, C.J.

Culp, J.P.T.